UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEFFREY HALL, <br> *Plaintiff*, <br> <br> v. <br> <br> ZELYNETTE CARON, *et al.*, <br> *Defendants*. | )    3:25-CV-735 (SVN) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    November 24, 2025 |

## INITIAL REVIEW ORDER

*Pro se* Plaintiff Jeffrey Hall, a sentenced[1] inmate currently incarcerated at Willard-Cybulski Correctional Institution ("Willard"), filed an amended complaint in this action pursuant to 42 U.S.C. § 1983. He names six defendants employed by Carl Robinson Correctional Institution: Warden Zelynette Caron, A.A. Denardis, Lieutenant Oullette, and three John Doe correctional officers. Plaintiff brings claims under the Fourth and Eighth Amendments, alleging that correctional officers unlawfully strip-searched him, making humiliating comments while doing so. Plaintiff sues Defendants in their official and individual capacities and seeks both damages and injunctive relief.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the amended complaint, or any portion of the amended complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such

---

[1] Information on the Department of Correction website shows that Plaintiff was sentenced on April 29, 2016, to a term of imprisonment of twenty years. *See* https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=397697 (last visited November 24, 2025). The Court may take judicial notice of matters of public record. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425(KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).

relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A.[2] Based on this initial review, the Court orders as follows.

I.      **FACTUAL BACKGROUND**

The Court does not include herein all of the allegations from the amended complaint but summarizes only those facts necessary to provide context for its initial review.

Plaintiff alleges that Officer John Doe 1 strip-searched Plaintiff "with no reasonable suspicion" after a non-contact video visit in February of 2024. Am. Compl., ECF No. 30 ¶ 1. When Plaintiff protested, John Doe 1 responded, "[i]t's the warden's policy and because I said so!" *See id.* ¶ 2. While Plaintiff undressed, Officers John Does 1 and 2 made "vulgar and insinuating remarks about the size of [Plaintiff's] 'pee-pee' and other humiliating insults regarding [Plaintiff's] genitalia and sexual orientation." *Id.* ¶ 3. After the search, Plaintiff submitted administrative requests for video preservation to Lieutenant Oullette and requests for a copy of the Administrative Directives concerning searches to Deputy Warden Carbone. *Id.* ¶ 4.

On March 9, 2024, correctional officers again forced Plaintiff to submit to a strip search "without any reasonable suspicion" after a non-contact video visit. *Id.* ¶ 5. While it is unclear from the complaint which officers conducted the search, at least two officers were present: John

---

[2] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A complaint that includes only "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

Doe 2 threatened to put Plaintiff in "seg" when Plaintiff asked officers to follow the procedure set forth in the Department of Correction's Administrative Directive 6.7, and John Doe 3 subjected Plaintiff to "mockery and ridicule" for requesting that a lieutenant be brought in to conduct a professional search. *Id.* ¶¶ 6–7. Plaintiff alleges that the "humiliation and degradation was much worse than the first [strip search]." *Id.* ¶ 7. Plaintiff again submitted requests to preserve video from the search after it concluded. *Id.* ¶ 8.

Less than one week after the second search, Warden Caron responded to an email from Plaintiff's attorney, discussing the "bizarre and at odds with [Administrative Directive] 6.7" search. *Id.* ¶ 9. Warden Caron claimed in the email response that prison administrators met with Plaintiff to discuss the search, but Plaintiff alleges this meeting never occurred. *Id.* ¶¶ 9–10. Plaintiff alleges that A. A. Denardis responded to Plaintiff's grievances seeking verification of this meeting. *Id.* ¶ 10. Plaintiff alleges that this response is "non-responsive." *Id.*

Plaintiff seeks reimbursement for court filing fees and other costs and expenses; monetary compensation for therapy he claims has been necessary based on the events described in the complaint; and injunctive relief in the form of a cease and desist order prohibiting strip searches of inmates after video visits and termination of Warden Caron's employment. *Id.* at 8.

**II.    DISCUSSION**

Even considering the special solicitude owed to *pro se* litigants, Plaintiff is still required to comply with the Federal Rules of Civil Procedure, including Rule 8. *See Triestman*, 470 F.3d at 474–77. Under Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and it must provide "fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (alteration and citation omitted). Rule 8 requires a statement for relief to be plain "because the principal

function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).  Plaintiff seeks to have the Court consider documents filed in another action, Case No. 3:24-MC-119 (VDO).  *See* ECF No. 30 at 7.

Implicit in the language of Rule 8 is that these requirements must be met *within the complaint itself*, not by references in the complaint to extraneous documents in support of Plaintiff's factual allegations filed across dockets.  *See e.g.*, ECF No. 30 at 7.[3]  Neither the Court nor Defendants should be required to determine the facts relevant to this case or parse out the claims against them by reviewing documents filed in a separate closed case in this District.  *See Salahuddin*, 861 F.2d at 42 (noting a complaint should not place "an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage").  Plaintiff's complaint, in its barebones recitation of facts and references to exhibits included in a closed case before Judge Oliver, does not comply with Rule 8's requirements.  Nevertheless, the Court will consider the claims in Plaintiff's complaint.

A. <u>Official Capacity Claims</u>

Plaintiff's complaint indicates that he asserts his claims against Defendants in their official and individual capacities.  ECF No. 1 at 8.  To the extent he asserts official capacity claims for monetary damages against Defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment.  *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  Thus, Plaintiff's claims for monetary damages against Defendants in their official capacities are

---

[3] To the extent Plaintiff requests the Court "incorporate missing documents and evidence from the original case # 3:25-CV-735 that are not included in [the] amended complaint," the Court cannot do so.  ECF No. 30 at 7.  The Court interprets Plaintiff's request to mean that the Court should incorporate documents from his initial complaint into its review of his amended complaint.  The Court's initial review order for Plaintiff's initial complaint was clear:  any amended complaint would "completely replace the [initial] complaint, and the Court [would] not consider any allegations made in the original complaint."  ECF No. 25.  As such, the Court will not consider any documents filed with Plaintiff's initial complaint that have not been filed with his amended complaint as well.

dismissed.

    B.  <u>Injunctive Relief</u>

Plaintiff may not seek injunctive relief from Defendants in their individual capacities, as they lack authority to provide such relief in those capacities. *See Kuck v. Danaher*, 822 F. Supp. 2d 109, 143 (D. Conn. 2011). And "an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006), *abrogated on other grounds as recognized by Kravitz v. Purcell*, 87 F.4th 111, 119, 122 (2d Cir. 2023). Thus, because Plaintiff has been transferred from Carl Robinson to Willard, Plaintiff's official capacity claims against Defendants—who are all employed at Carl Robinson—must be dismissed as moot, insofar as they seek injunctive relief.

    C.  <u>Personal Involvement</u>

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation, regardless of any supervisory status. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."); *see also Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability"). "Personal involvement may be shown by 'direct participation,' which requires in this context 'intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal.'" *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quotation omitted).

Plaintiff has sufficiently alleged that John Does 1–3 "directly participat[ed]" in one or more strip searches, such that they may be considered personally involved. *See* ECF No. 30 ¶¶ 1, 3, 6, 7.

Plaintiff mentions Lieutenant Oullette by name in another part of the complaint but alleges only that this was the staff member to whom Plaintiff directed his request for video preservation after the first strip search. *See id.* ¶ 4. Being the intended recipient of a request for video preservation is insufficient, by itself, to establish the personal involvement of a supervisor. *See Brown v. Reis*, No. 3:24-CV-00950 (KAD), 2024 WL 4723333, at *5 (D. Conn. Nov. 8, 2024) (noting that "receipt of a letter or grievance without personally investigating or acting is not enough to establish a supervisor's personal involvement"). While "a plaintiff can establish personal involvement where a supervisory official receives and acts on a prisoner's grievance," *id.* (internal citation omitted), Plaintiff does not allege that Lieutenant Oullette acted on Plaintiff's request seeking preservation of the video from the search. Thus, Plaintiff has not demonstrated facts to show Lieutenant Oullette's personal involvement in the alleged constitutional violation.

Defendant Denardis acted on Plaintiff's requests seeking verification of a meeting between Plaintiff and supervisory officials, but Plaintiff does not attach any of the administrative requests and only states that Defendant Denardis' response was "non-responsive." *See id.* ¶ 10. This allegation, without more, is insufficient to allege Defendant Denardis' personal involvement in any constitutional violation.

Lastly, Plaintiff maintains that Warden Caron responded to an email from Plaintiff's attorney about the "bizarre" strip search of Plaintiff. *Id.* ¶ 9. Responding to an attorney's complaint about a client's mistreatment is sufficiently analogous to responding to a prisoner's complaint about his own mistreatment. *See Brown*, 2024 WL 4723333, at *5. As such, Plaintiff

has sufficiently alleged the personal involvement of Warden Caron in the alleged constitutional violations.

Thus, Plaintiff's Fourth Amendment and Eighth Amendment claims pertaining to unreasonable strip searches may proceed against John Does 1–3 and Warden Caron, but not as against Defendants Oullette and Denardis.

D. Individual Capacity Claims for Monetary Relief

Construing Plaintiff's complaint liberally and interpreting it to raise the strongest claims it may suggest, *Sykes*, 723 F.3d at 403, the Court finds the complaint alleges (1) a Fourth Amendment claim related to the unreasonable search of his person during the strip searches and (2) an Eighth Amendment claim related to the conduct of correctional officers during the strip searches. The Court discusses each claim in turn.

1. *Fourth Amendment Claim*

The Court construes Plaintiff's complaint to allege that officers violated his Fourth Amendment rights when they strip-searched Plaintiff without reasonable suspicion after non-contact video visits in February and March of 2024. ECF No. 30 ¶¶ 1, 5.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In the prison context, the Fourth Amendment proscribes unreasonable strip searches. *See Bell v. Wolfish*, 441 U.S. 520, 558 (1979); *Harris v. Miller*, 818 F.3d 49, 58 n.2 (2d Cir. 2016). Courts consider four factors when deciding whether a prison search is unreasonable: "(1) the scope of the intrusion, (2) the manner in which it is conducted, (3) the justification for initiating it, and (4) the place in which it is conducted." *Harris*, 818 F.3d at 58 (quoting *Bell*, 441 U.S. at 559). A strip search violates the Fourth Amendment "if it is unrelated to any legitimate penological goal or if it

7

is designed to intimidate, harass, or punish." *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006) (collecting cases), *aff'd*, 461 F. App'x 18 (2d Cir. 2012) (summary order).

Officers are also liable when they fail to intervene to stop a constitutional violation by another officer when in a position to observe the conduct and with time to intervene. *See Sloley v. VanBramer*, 945 F.3d 30, 46–47 (2d Cir. 2019); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.").

Plaintiff's allegations suggest that Defendants John Does 1, 2, and 3 subjected Plaintiff to an unwarranted strip search or were present when this occurred. *See* ECF No. 30 ¶¶ 1, 3, 5–7. Additionally, Plaintiff alleges that, in communicating with his attorney, Warden Caron was aware of the unwarranted strip search through discussions with attorney and did not take sufficient action to correct the issue. *Id.* ¶ 9–10. For purposes of initial review, Plaintiff has sufficiently alleged facts to suggest that these Defendants subjected him to an unreasonable search in violation of the Fourth Amendment. *See Raynor v. Trumell*, No. 3:24CV1270 (KAD), 2025 WL 375073, at *4 (D. Conn. Feb. 3, 2025) (advancing identical claim); *Manson v. Caron*, No. 3:24-CV-00876 (MPS), 2024 WL 4188504, at *4 (D. Conn. Sept. 13, 2024) (same). Accordingly, the Court will permit this claim to proceed as to the remaining Defendants.

    2. *Eighth Amendment Claim*

The Court also construes Plaintiff's complaint as alleging that officers violated his Eighth Amendment rights when they made humiliating comments "regarding [Plaintiff's] genitalia and sexual orientation" during the strip searches. ECF No. 30 ¶¶ 3, 7.

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when the official's action involves the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)). To succeed on an Eighth Amendment claim, Plaintiff "must show (1) a deprivation that is objectively, sufficiently serious . . . and (2) a sufficiently culpable state of mind on the part of the defendant official." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (internal quotation marks omitted). The deprivations must be examined in light of contemporary standards of decency to determine whether they are sufficiently serious. *See Helling v. McKinney*, 509 U.S. 25, 35–36 (1993); *see also Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Subjectively, Plaintiff must show that Defendants "know[ ] that inmates face a substantial risk of serious harm and disregard[ ] that risk." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

"Under certain limited circumstances, the manner in which a search is conducted may give rise to an Eighth Amendment claim." *Rosa v. Cook*, No. 3:22-CV-00703 (SALM), 2022 WL 2981574, at *9 (D. Conn. July 28, 2022) (internal quotation marks omitted). But "courts are generally reluctant to conclude that strip searches – even where an inmate alleges aggressive or inappropriate behavior – rise to the level of objectively serious enough to constitute an Eighth Amendment violation." *Id.* (internal quotation marks omitted). "Generally, an inmate's claim that a correctional officer made harassing statements about an inmate's genitalia alone is not sufficient for an Eighth Amendment claim absent any physical contact with the alleged perpetrator or without any alleged egregious sexual conduct." *Costa v. Bowers*, No. 3:24-CV-02008 (KAD), 2025 WL 509342, at *3 (D. Conn. Feb. 14, 2025) (citing cases).

Here, Plaintiff alleges that officers made "remarks about the size of [Plainitff']s] 'pee-pee'" during the February strip search. ECF No. 30 ¶ 3. Plaintiff also maintains that the "humiliation

9

and degradation was much worse" during the March strip search. *Id.* ¶ 7. While such humiliating comments are contemptible, they do not rise to an Eighth Amendment violation because they were not accompanied by "any physical contact with the alleged perpetrator" or "egregious sexual conduct." *Costa*, 2025 WL 509342, at *3. Accordingly, Plaintiff's Eighth Amendment claim is dismissed. 28 U.S.C. § 1915A(b)(1).[4]

## ORDERS

Based on the foregoing, the Court issues the following orders:

Plaintiff may proceed on his individual capacity claims against Defendants Warden Caron, and Officers John Doe 1, 2, and 3 based on his Fourth Amendment claim for unreasonable strip searches. Plaintiff's Eighth Amendment claim is dismissed.

Plaintiff's claims against all Defendants in their official capacities are dismissed. Plaintiff's claims for injunctive relief are dismissed as moot. The Clerk is directed to terminate Defendants Oullette and Denardis from this action.

Accordingly, this case may proceed to service against Defendants Warden Caron and Officers John Doe 1, 2, and 3 in their individual capacities. The Clerk shall contact the Department of Correction Office of Legal Affairs to ascertain the current service address for Defendant Caron, mail a waiver of service of process request packet containing the amended complaint and this Initial Review Order to Defendant Caron at the addresses provided by **December 8, 2025**, and report to the Court on the status of the waiver request on the thirty-fifth day after mailing. If

---

[4] Plaintiff has provided additional authority from the District of South Dakota, *Wabasha v. Solem*, 580 F. Supp. 448, 452 (D.S.D. 1984), and from the Ninth Circuit, *Somers v. Thurman*, 109 F.3d 614, 624 (9th Cir. 1997). *See* Not. of Add'l Auth., ECF No. 34. *Wabasha* is an out-of-circuit district court case that is non-binding on this Court and, regardless, concerned a determination of whether an award attorneys' fees was appropriate, rather than addressing the underlying Eighth and Fourteenth Amendment constitutional claims justifying the award. *Wabasha*, 580 F. Supp. 448, 450 (D.S.D. 1984). Further, *Somers* is also out-of-circuit non-binding precedent where the Ninth Circuit held that repeated insults from female guards to male inmates during visual body cavity searches did not satisfy the objective harm prong of the Eighth Amendment analysis. *Somers*, 109 F.3d at 622. Thus, neither of Plaintiff's additional cases change the Court's analysis.

Defendant Caron fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on Defendant Caron in their individual capacity, and he or she shall be required to pay the cost of such service.

The Clerk shall email a courtesy copy of this order to the appropriate contacts at the Attorney General's Office and the Department of Correction.

**Doe Defendants.** The Court advises Plaintiff that the Court cannot serve the complaint on John Does 1, 2, and 3 because Plaintiff has not provided the first or last names for these Defendants. Plaintiff will have ninety (90) days from the date of appearance of counsel of the first Defendant to appear in this action to file a notice identifying John Does 1, 2, and 3 by their first and last names. Plaintiff may determine the identities of John Does 1, 2, and 3 by reviewing his materials and by sending a discovery request to counsel for any other Defendant, once such Defendant appears in this action. Failure to identify these John Doe defendants by the above deadline will result in dismissal of all claims against these Defendants.

<u>**Changes of Address.**</u> If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that he **MUST** notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendants or counsel for Defendants of his new address.

**SO ORDERED** at Hartford, Connecticut, this 24th day of November, 2025.

                                         */s/ Sarala V. Nagala*
                                         SARALA V. NAGALA
                                         UNITED STATES DISTRICT JUDGE